E-FILED
Monday, 26 February, 2018  03:52:34 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA ILLINOIS DIVISION

TOMMY T. TRAPPS

           Plaintiff,

v.

                                  Case No.:    18

PEORIA PUBLIC SCHOOLS, DISTRICT #150 and
the SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL 8 FIREMAN AND OILERS,

           Defendants.

COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, TOMMY T. TRAPPS, by and through his attorneys, Dodd & Maatuka, and for Plaintiff's Complaint against Defendants, PEORIA PUBLIC SCHOOLS, DISTRICT #150 and the SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 8 FIREMAN AND OILERS, states to the Court as follows:

INTRODUCTION, JURISDICTION and VENUE

1) This is an action for damages against Defendants for their discriminatory treatment, retaliation and wrongful termination of Plaintiff's employment in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101, et. seq. ("ADA"), the Illinois Human Rights Act, 775 ILCS 5/2-102 and the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2601 and parallel Illinois state laws.

2) During all times relevant herein, Plaintiff, TOMMY T. TRAPPS has been a citizen of Peoria, Peoria County, Illinois.

3) Defendant, PEORIA PUBLIC SCHOOLS, DISTRICT #150 (hereafter School District) is a public school district with its principal place of business at 3202 N. Wisconsin Avenue, Peoria, Peoria County, Illinois.

4) Defendant School District was, at all times herein, an employer within the meaning of the applicable statutes identified in paragraph 1 above.

5) Defendant, SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 8, FIREMAN AND OILERS (hereafter Union) is a local chapter of an international labor union whose principal place of business is 5314 West Ancient Oak Drive, Peoria, Peoria County, Illinois.

6) Defendant Union was, at all times herein, an employer within the meaning of the applicable statutes identified in paragraph 1 above.

7) During all times relevant to Plaintiff's Complaint, Plaintiff was employed through the Union to perform services at the School District facilities in Peoria, Peoria County, Illinois.

8) Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims arose out of acts and transactions that occurred in this district and under 29 U.S.C. § 2617, and 28 U.S.C. § 1331.

## FACTUAL BACKGROUND COMMON TO ALL CLAIMS

9) Upon information and belief, Defendant School District operates over twenty-five separate facilities in Peoria County, Illinois.

10) Defendant, Union is a local chapter of an international labor union which represents the collective interests of individuals employed in certain manual labor support staff positions, including those within the School District.

11) Plaintiff, TOMMY T. TRAPPS is an adult male.

12) During times relevant to Plaintiff's Complaint, Plaintiff was a qualified individual with a disability and a record of impairment.

13) During times relevant to Plaintiff's Complaint, TRAPPS was limited in daily life functions as a result of an anxiety disorder which impaired his ability to function in both his home and work environments.

14) Plaintiff was initially hired to work as a custodian at the School District buildings on September 13, 2011.

15) At all times herein, Plaintiff was a member of Defendant Union.

16) When hired by the School District, Plaintiff was able to perform the essential functions of his job as a custodian.

17) Plaintiff was assigned to the Rolling Acres facility from his date of hire until March of 2012.

18) In March 2012, Plaintiff approached the maintenance supervisor, Dave Meyers (hereafter Meyers) and the school principal regarding issues with "Jerry," the head custodian at Rolling Acres.

19) Plaintiff indicated that "Jerry" was not completing his assigned tasks, leaving Plaintiff with substantially more duties than one person could perform in a single shift.

20) In March of 2012 Plaintiff was, at his own request, reassigned to another facility within the School District.

21) On June 25, 2012 Plaintiff had his first employment review. That review indicated Plaintiff was "Exceeding Expectations" on each criterion evaluated.

22) Over the summer of 2012 Plaintiff was assigned a "crew leader" supervisory position, supervising approximately fifteen (15) workers.

23) On October 11, 2012 Plaintiff was reassigned to the Rolling Acres facility, again under the supervision of "Jerry."

24) On October 11, 2012, Plaintiff arrived at Rolling Acres to find that Jerry's crew had left a majority of their assigned duties incomplete.

25) Concerned about his ability to complete the work of both shifts, Plaintiff called Meyers for direction. Plaintiff was instructed to perform his own assigned duties and was assured that he would not be held responsible for the prior shift's neglected duties.

26) Immediately after that October 11, 2012 call to Meyers, several agents and employees of the School District began harassing Plaintiff on a daily basis.

27) On October 16, 2012 Plaintiff wrote School District's Superintendent voicing concern over the harassing treatment he was receiving at the School District.

28) On October 18, 2012 Plaintiff was notified that his employment with the School District was being terminated.

29) On or around October 25, 2012 Plaintiff was returned to work.

30) Also on October 25, 2012 Meyers wrote Plaintiff, advising that October 18-24, 2012 would be treated as an unpaid suspension as a result of Plaintiff's failure to "adequately or appropriately" perform his job on October 11, 2012.

31) From October 25, 2012 until February 12, 2014 Plaintiff continued to work for School District.

32) Based on Plaintiff's work performance, Plaintiff was promoted to Head Custodian at School District's Harrison Facility.

33) On February 12, 2014 Plaintiff received an Employee Communication Report "Verbal Warning" for several alleged offenses.

34) On March 4, 2014 Plaintiff received a Written Warning for allegedly conducting maintenance in an unsafe manner.

35) On April 3, 2014 Plaintiff requested FMLA due to severe work related anxiety.

36) On April 17, 2014 Plaintiff was given an Employee Communication Report alleging several offenses. That report requested Plaintiff be transferred to a different facility.

37) On April 17, 2014 Plaintiff was transferred to the School District's Charter Oaks Primary School facility.

38) On May 10, 2014 an employee of Defendant School District filed a false complaint alleging that Plaintiff had urinated into a floor drain.

39) On May 10, 2014 Plaintiff was placed on administrative leave pending investigation into the May 10, 2014 allegations.

40) On May 21, 2014 Plaintiff wrote Superintendent Lathan complaining again of the hostile work environment.

41) At some point after May 10, 2014 and prior to June 24, 2014 Plaintiff returned to work as the Head Custodian of Charter Oak Primary School.

42) On June 24, 2014 a meeting was held to discuss the allegations raised in Plaintiff's May 21, 2014 correspondence. At that time Plaintiff was asked if he wished to file an official Complaint. Plaintiff declined to do so since he was no longer working in the facilities where he had been subjected to the majority of the hostile work environment.

43) On June 30, 2014 Plaintiff received correspondence from School District's Employee, Geri Hammer, indicting that his April 3, 2014 FMLA request was being denied based on insufficient documentation.

44) On March 17, 2015 Plaintiff, and other employees of Defendant School District, were given Advisory Employee Communication Reports discussing their strengths and areas needing improvement prior to annual evaluations.

45) Plaintiff's Advisory Employee Communication Report indicated that Plaintiff had improved in all areas formerly cited as weaknesses.

46) On April 21, 2015 Plaintiff received his annual performance evaluation, which found that he met expectations in all criterion evaluated.

47) On May 13, 2015 Plaintiff was notified he would be honorably dismissed due to a reduction in personnel as of June 30, 2015.

48) On June 26, 2015 Plaintiff was offered a position as a Preventative Maintenance Personnel at School District, which he accepted.

49) Plaintiff underwent training for his Preventative Maintenance Personnel position from July 6 through August 12, 2015.

50) On September 16, 2015 Plaintiff received an Advisory Employee Communications Report.

51) On September 25, 2015 Plaintiff made a request for FMLA based on work related anxiety.

52) On October 9, 2015 School District Employee, Angela Burch, contacted Plaintiff's doctor and requested additional documentation. That documentation was faxed to Burch on October 12, 2015.

53) On October 13, 2015 School District Employee Geri Hammer denied Plaintiff's request for FMLA.

54) On October 26, 2015 Plaintiff was issued an Employee Communication Report alleging that he backed into a garage door on October 22, 2015.

55) On November 18, 2015 Plaintiff submitted a request for FMLA due to his wife's serious medical condition.

56) Upon information and belief, Defendant School District failed to respond to Plaintiff's November 18, 2015 request for FMLA.

57) On December 9, 2015, Plaintiff received an Employee Communication Report.

58) On December 17, 2015 employees of School District inspected twenty (20) of the busses Plaintiff was charged with maintaining. Although Plaintiff requested to be present while the inspection of the busses was made, Plaintiff's request was denied.

59) On December 21, 2015, School District Employee John Henry wrote a memo allegedly describing the results of the inspection and recommending Plaintiff's termination from the School District.

60) On December 31, 2015 Defendant Union was advised by an employee of Defendant School District that Plaintiff would be terminated.

61) On January 4, 2016 Geri Hammer, an employee of Defendant School District, advised Plaintiff he was being terminated.

62) During all times relevant herein Defendant School District and Defendant Union had the power to directly affect the terms and conditions of Plaintiff's employment at the School District.

63) During all times relevant herein, Defendant School District and Defendant Union had the power to directly affect the terms and conditions of the employment of Plaintiff's superiors and co-workers at the School District.

64) Upon information and belief, Defendant School District and Defendant Union had an obligation to ensure the working environment at the School District facilities was professional and free from harassing, discriminating, inappropriate conduct and/or conduct that violated Plaintiff's state and federally protected rights.

65) Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant School District.

66) Plaintiff received his Notice of Right to Sue from the Equal Employment Opportunity Commission advising of the 90-days to file a Complaint against Defendant School District.

67) Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant Union.

68) Plaintiff received his Notice of Right to Sue from the Equal Employment Opportunity Commission advising of the 90-days to file a Complaint against Defendant Union.

## COUNT I

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED
(Harassment/Discrimination/Retaliation by Defendant School District)

NOW COMES Plaintiff, by counsel, and hereby incorporated the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

69) Plaintiff incorporates by reference all paragraphs of the Factual Background Section as if fully set forth herein.

70) Defendant School District is an employer as that term is defined by the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et. seq., as amended, and the ADA Amendments Act of 2009 (collectively the "ADAAA") that went into effect on January 1, 2009. Upon information and belief, School District employs more than 500 employees.

71) The ADA prohibits discrimination by an employer against a qualified individual with a disability in the terms and conditions of employment, including discharge. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

72) The ADA requires an employer to provide a reasonable accommodation to a qualified individual with a disability to enable him to perform the essential functions of his job. 42 U.S.C. §§ 12111(9)(B), 12112(B)(5)(a)(b); 29 C.F.R. §§ 1630.2(o)(2)(ii), 1630.9.

73) Plaintiff was a competent and loyal employee who performed his work in a satisfactory manner, meeting all of his legitimate job expectations.

74) Plaintiff is a qualified individual with a disability due to having a record of impairment and/or being substantially limited in one or more daily life activities due to an anxiety disorder, which is neither transitory nor minor.

75) Plaintiff was able to perform the essential functions of his job at Defendant School District with accommodation.

76) Defendant School District was aware of Plaintiff's disability because Plaintiff requested accommodation as a result of his disability.

77) Following Plaintiff's disclosure of his disability, Plaintiff became the target of other School District employees who interfered with Plaintiff's job performance and caused substantial detriment to Plaintiff's employment relationship with Defendant School District.

78) Plaintiff received disparate treatment from Defendant School District and Plaintiff's ability to perform his job duties was sabotaged by insubordination of employees he was assigned to supervise.

79) Plaintiff reported the insubordination and its effect on his ability to perform his own job duties to his supervisors. However, Defendant School District chose to discipline Plaintiff instead of the offending employees.

80) Defendant School District sabotaged and allowed others to sabotage Plaintiff's employment, allowed harassment of Plaintiff and allowed false accusations of poor job performance by Plaintiff from District employees.

81) The conduct of Defendant School District and its employees unreasonably interfered with Plaintiff's job performance and caused substantial detriment to Plaintiff's employment relationship with Defendant School District.

82) During the course and scope of Plaintiff's employment with School District, Defendant School District by its agents, servants, supervisors, administrators, human resources and/or employees, acting within the course and scope of their employment, demonstrated a continuous, repetitious, cycle and pattern of harassment, discrimination and retaliation against Plaintiff, which the School District condoned and ratified, took no action to stop, and performed willfully or wantonly while Defendant School District was aware or should have been aware of such misconduct by and through its agents, servants, supervisors, administrators, human resources and/or employees in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12112, et. seq., as amended, and the ADA Amendments Act of 2009 (collectively the "ADAAA") that went into effect on January 1, 2009.

83) Said discrimination by Defendant School District and its agents, servants, supervisors, administrators, human resources and/or employees was willful, wanton, malicious, intentional and oppressive.

84) Defendant School District's unlawful employment practices were intentional, and the School District and its employees acted with reckless indifference to Plaintiff's federally protected rights.

85) As a result of Defendant School District's unlawful actions, Plaintiff has been injured. Such injuries include, but are not limited to, lost pay, lost benefits, lost promotion opportunities, pecuniary losses, mental anguish, humiliation, injury to reputation, and pain and suffering.

WHEREFORE, Plaintiff requests that this Court award Plaintiff the following relief:

      a.  Back pay with interest, as appropriate;

      b.  Front pay as appropriate;

      c.  Compensatory damages;

      d.  Punitive damages;

      e.  Costs, expenses, witness fees and reasonable attorney fees; and

f.   Such additional relief as this Court deems just and proper.

## COUNT II

### RETALIANTION CLAIMS BASED ON PLAINTIFF'S COMPLAINTS OF DISCRIMINATION BY DEFENDANT SCHOOL DISTRICT

NOW COMES Plaintiff, by counsel, and states in support of Plaintiff's claim against Defendant School District as follows:

86) Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

87) Defendant School District is an employer as that term is defined by the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et. seq., as amended, and the ADA Amendments Act of 2009 (collectively the "ADAAA") that went into effect on January 1, 2009. Upon information and belief, School District employs more than 500 employees.

88) The ADA prohibits discrimination by an employer against a qualified individual with a disability in the terms and conditions of employment, including discharge. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

89) The ADA requires an employer to provide a reasonable accommodation to a qualified individual with a disability to enable him to perform the essential functions of his job. 42 U.S.C. §§ 12111(9)(B), 12112(B)(5)(a)(b); 29 C.F.R. §§ 1630.2(o)(2)(ii), 1630.9.

90) Plaintiff is a qualified individual with a disability due to having a record of impairment and/or being substantially limited in one or more daily life activities due to an anxiety disorder, which is neither transitory nor minor.

91) Plaintiff requested accommodation as a result of his disability and said accommodations were denied.

92) Following Plaintiff's disclosure of his disability, Plaintiff became the target of other School District employees who interfered with Plaintiff's job performance and caused substantial detriment to Plaintiff's employment relationship with Defendant School District.

93) Plaintiff received disparate treatment from Defendant School District and his ability to perform his job duties was sabotaged.

94) On several occasions, Plaintiff notified Defendant School District in writing, of the harassment and discrimination.

95) Once Plaintiff complained of the harassment and discrimination, Plaintiff's treatment by School District worsened.

96) Despite Plaintiff's reports of discrimination and harassment, Defendant School District either took no action or chose to discipline Plaintiff.

97) Defendant School District sabotaged and allowed others to sabotage Plaintiff's work, allowed harassment of Plaintiff by School District employees and allowed others to make false accusations of poor job performance by Plaintiff.

98) The conduct of Defendant School District and its employees unreasonably interfered with Plaintiff's job performance and caused substantial detriment to Plaintiff's employment relationship with Defendant School District.

99) On several occasions during Plaintiff's employment with Defendant School District, Plaintiff was reassigned, with each reassignment requiring Plaintiff to serve a new six month probationary period.

100) On January 12, 2015 Defendant School District terminated Plaintiff's employment in retaliation for his requests for accommodation of his disability and/or complaints of discrimination based on his disability.

101) There was no legitimate non-discriminatory/non-retaliatory reason for any of the alleged discriminatory acts and/or retaliatory termination of Plaintiff.

102) Defendant School District's above-stated actions were willful, malicious, in bad faith, outrageous and extraordinary.

103) Defendant School District engaged in the herein alleged willfully and malicious violations of the law knowingly, intending to violate federal law.

104) Defendant School District's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurred severe damages, including, but not

limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

WHEREFORE, Plaintiff requests that this Court award Plaintiff the following relief:

    a.  Back pay with interest, as appropriate;

    b.  Front pay as appropriate;

    c.  Compensatory damages;

    d.  Punitive damages;

    e.  Costs, expenses, witness fees and reasonable attorney fees; and

    f.  Such additional relief as this Court deems just and proper.


## COUNT III

### JUNE 30, 2014 VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993 ("FMLA") by Defendant School District

NOW COMES Plaintiff, by counsel, and hereby incorporated the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

105) This action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. This court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

106) Plaintiff is informed and believes that Geri Hammer (hereinafter Hammer) is, and at all times material hereto was, an agent, employee, and servant of the master, Defendant School District, and was acting within the course and scope of his agency or employment authority as such, with knowledge, express or implied, of Defendant School District.

107) Hammer, acting under the authority of Defendant School District, denied Plaintiff the requisite leave permitted under the FLMA on three separate occasions in violation of the FMLA.

108) From September 13, 2011 until January 12, 2016, Plaintiff was an employee of Defendant School District.

109) On April 3, 2014 Plaintiff sought medical treatment by Dr. Craig Higgs for symptoms of uncontrolled anxiety.

110) On April 7, 2014, Dr. Higgs completed a Certification of Health Care Provider for Employee's Serious Health Condition, which was returned to Defendant School District.

111) Dr. Higgs indicated that Plaintiff would need a few days to rest and calm down and will need ongoing counseling and treatment. Dr. Higgs indicated that the future treatment schedule was unknown at that time and would be determined by Psychology.

112) On June 30, 2014, Hammer, as agent for Defendant School District, sent a letter to Plaintiff indicating that Plaintiff's documentation was "incomplete and required certification from your physician." It is unclear from Hammer's letter why Defendant School District believed the Certification completed by Dr. Higgs was insufficient.

113) Defendant School District did not request any additional documentation from Plaintiff or his provider(s).

114) Plaintiff asserts and alleges that in denying his FMLA request of April 7, 2014 Defendant School District failed to comply with the applicable statutes and regulations, and instead, performed these actions in such a way as to discriminate against Plaintiff.

115) As a result of Defendant School District's denial of Plaintiff's medically recommended leave, Plaintiff's anxiety worsened and Plaintiff's ability to compensate for the symptoms of his disability, decreased.

116) Plaintiff states that he had an entitlement to leave as defined in  29 U.S.C. § 2612 and that he was denied his entitlement to leave as prescribed in FMLA.

117) As a result of the denial of Plaintiff's leave, Plaintiff's disability worsened, and interfered with Plaintiff's ability to perform his job duties.

118) As a result of Plaintiff's worsening condition, Plaintiff was subject to disciplinary action which led to Plaintiff being reassigned. Further, the denial of Plaintiff's FMLA request damaged the Employer/Employee relationship

that existed between Plaintiff and Defendant School District, eventually leading to Plaintiff's termination on January 12, 2016.

119) As a result of Defendant's denial of Plaintiff's FMLA leave, Plaintiff has incurred and continues to incur loss of wages, medical expenses, back pay from the date of his termination, lost employment benefits from the date of his termination, the loss of front pay as of the date of this Complaint, attorney's fees and costs as well as any interest on the amounts thereon as provided in the FMLA.

WHEREFORE, Plaintiff requests that this Court award Plaintiff the following relief:

    a.  Back pay with interest, as appropriate;

    b.  Front pay as appropriate;

    c.  Compensatory damages;

    d.  Punitive damages;

    e.  Costs, expenses, witness fees and reasonable attorney fees; and

    f.  Such additional relief as this Court deems just and proper.


## COUNT IV

### OCTOBER 13, 2015 VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993 ("FMLA") by Defendant School District

NOW COMES Plaintiff, by counsel, and hereby incorporated the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

120) This action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. This court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

121) Plaintiff is informed and believes that Geri Hammer (hereinafter Hammer) is, and at all times material hereto was, an agent, employee, and servant of the master, Defendant School District, and was acting within the course and scope of his agency or employment authority as such, with knowledge, express or implied, of Defendant School District.

122) Hammer, acting under the authority of Defendant School District, denied Plaintiff the requisite leave permitted under the FLMA on three separate occasions in violation of the FMLA.

123) From September 13, 2011 until January 12, 2016, Plaintiff was an employee of Defendant School District.

124) On September 25, 2015 Plaintiff sought medical treatment by Dr. Craig Higgs for symptoms of uncontrolled anxiety.

125) On September 25, 2015 Dr. Higgs completed a Certification of Health Care Provider for Employee's Serious Health Condition, which was returned to Defendant School District.

126) In his Certification of September 25, 2015, Dr. Higgs indicated that Plaintiff would begin medication and other treatment and that he would be returning for additional care on in three weeks.

127) Further, Dr. Higgs indicated that Plaintiff's condition would cause episodic flare-ups periodically preventing the employee from performing his job functions.

128) Dr. Higgs indicted that he would estimate that Plaintiff would be incapacitated between one and four times over the next 12 months and each period of incapacitation would last from two to five days per episode.

129) On October 9, 2015, Angela Burch (hereafter Burch), an employee of Defendant School District, phoned the office of Dr. Higgs to indicate that there were "issues" with how the medical certification was completed.

130) Nurse Tamora Curtis (hereinafter Curtis) asked Burch what concerns the School District had with the Certification. Burch said the writing was difficult to read and they needed specific dates Plaintiff would miss work.

131) Curtis advised Burch that the FMLA was being requested as intermittent FMLA and that the exact dates were not yet known.

132) Burch indicated that she did not believe intermittent leave was allowed under the FMLA, and then requested that the form be modified to state that the leave requested would be intermittent.

133) Although the Certification already indicated in paragraph 7 that Plaintiff was requesting intermittent leave Dr. Higgs wrote an addendum on October 12, 2015 requesting Plaintiff be allowed intermittent leave as needed, in intervals of two to seven days at a time and up to three times per year.

134) The October 12 Certification with Addendum was delivered to Defendant School District on the same day.

135) Defendant School District did not request any additional documentation from Plaintiff or his provider(s).

136) On October 13, 2015, Hammer, as an agent for Defendant School District, sent a letter to Plaintiff indicating that Plaintiff was "ineligible" under FMLA guidelines and denying his request. No further explanation was offered.

137) Plaintiff asserts and alleges that in denying his FMLA request of October 12, 2015, Defendant School District failed to comply with the applicable statutes and regulations, and instead, performed these actions in such a way as to discriminate against Plaintiff.

138) As a result of Defendant School District's denial of Plaintiff's medically recommended leave, Plaintiff's anxiety worsened and Plaintiff's ability to compensate for the symptoms of his disability, decreased.

139) As a result of Defendant School District's denial of Plaintiff's FMLA request, Plaintiff was denied his right to intermittent leave for purposes of obtaining care for his disability.

140) Plaintiff states that he had an entitlement to leave as defined in 29 U.S.C. § 2612 and that he was denied his entitlement to leave as prescribed in FMLA.

141) As a result of the denial of Plaintiff's leave, Plaintiff's disability worsened, and interfered with Plaintiff's ability to perform his job duties.

142) As a result of Plaintiff's worsening condition, Plaintiff was terminated on January 12, 2016 and has incurred and continues to incur loss of wages, medical expenses, back pay from the date of his termination, lost employment benefits from the date of his termination, the loss of front pay as

of the date of this Complaint, attorney's fees and costs as well as any interest
on the amounts thereon as provided in the FMLA.

WHEREFORE, Plaintiff requests that this Court award Plaintiff the following relief:

    a.  Back pay with interest, as appropriate;

    b.  Front pay as appropriate;

    c.  Compensatory damages;

    d.  Punitive damages;

    e.  Costs, expenses, witness fees and reasonable attorney fees; and

    f.  Such additional relief as this Court deems just and proper.

## COUNT V

### NOVEMBER 19, 2015 VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993 ("FMLA") by Defendant School District

NOW COMES Plaintiff, by counsel, and hereby incorporated the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

143) This action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. This court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

144) Plaintiff is informed and believes that Geri Hammer (hereinafter Hammer) is, and at all times material hereto was, an agent, employee, and servant of the master, Defendant School District, and was acting within the course and scope of his agency or employment authority as such, with knowledge, express or implied, of Defendant School District.

145) Hammer, acting under the authority of Defendant School District, denied Plaintiff the requisite leave permitted under the FLMA on three separate occasions in violation of the FMLA.

146) From September 13, 2011 until January 12, 2016, Plaintiff was an employee of Defendant School District.

147) Plaintiff is married to Patricia Ann Trapps, who suffers from several chronic medical conditions.

148) On November 19, 2015 Plaintiff's wife sought medical treatment by Rebecca A. Knight.

149) As a result of his wife's serious medical conditions, Plaintiff submitted an FMLA request seeking intermittent leave to care for his chronically ill wife.

150) Defendant School District failed to respond at all to Plaintiff's November 19 FMLA request.

151) Defendant School District did not request any additional documentation from Plaintiff, his wife, or her provider(s).

152) Plaintiff asserts and alleges that in denying his FMLA request of November 19, 2015, Defendant School District failed to comply with the applicable statutes and regulations, and instead, performed these actions in such a way as to discriminate against Plaintiff.

153) As a result of Defendant School District's denial of Plaintiff's requested leave to care for his wife, Plaintiff's anxiety worsened and Plaintiff's ability to compensate for the symptoms of his disability, decreased.

154) Plaintiff states that he had an entitlement to leave as defined in FMLA 29 U.S.C. § 2612 and that he was denied his entitlement to leave as prescribed in FMLA.

155) As a result of the denial of Plaintiff's leave, Plaintiff's condition worsened, and interfered with Plaintiff's ability to perform his job duties.

156) As a result of Plaintiff's worsening condition, Plaintiff was terminated on January 12, 2016 and has incurred and continues to incur loss of wages, medical expenses, back pay from the date of his termination, lost employment benefits from the date of his termination, the loss of front pay as of the date of this Complaint, attorney's fees and costs as well as any interest on the amounts thereon as provided in the FMLA.

WHEREFORE, Plaintiff requests that this Court award Plaintiff the following relief:

    a.   Back pay with interest, as appropriate;

    b.   Front pay as appropriate;

    c.   Compensatory damages;

    d.   Punitive damages;

    e.   Costs, expenses, witness fees and reasonable attorney fees; and

    f.   Such additional relief as this Court deems just and proper.

COUNT VI

VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED<br>(Harassment/Discrimination/Retaliation/Failure to Act by Defendant Union)

  NOW COMES Plaintiff, by counsel, and hereby incorporated the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

157) Plaintiff incorporates by reference all paragraphs of the Factual Background Section as if fully set forth herein.

158) Defendant Union is an employer as that term is defined by the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et. seq., as amended, and the ADA Amendments Act of 2009 (collectively the "ADAAA") that went into effect on January 1, 2009. Upon information and belief, Defendant Union has more than 15 employees.

159) The ADA prohibits discrimination by Unions against a qualified individual with a disability in the terms and conditions of employment, including discharge. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

160) The ADA requires an employer to provide a reasonable accommodation to a qualified individual with a disability to enable him to perform the essential functions of his job. 42 U.S.C. §§ 12111(9)(B), 12112(B)(5)(a)(b); 29 C.F.R. §§ 1630.2(o)(2)(ii), 1630.9.

161) Defendant Union was required to represent Plaintiff in negotiating and protecting the terms of Plaintiff's employment at Defendant School District.

162) Plaintiff was a competent and loyal employee who performed his work in a satisfactory manner, meeting Defendant Union's legitimate job expectations of him.

163) Plaintiff is a qualified individual with a disability due to having a record of impairment and/or being substantially limited in one or more daily life activities due to an anxiety disorder, which is neither transitory nor minor.

164) Plaintiff was able to perform the essential functions of his job through Defendant Union, at the facilities of Defendant School District, with accommodation.

165) Defendant Union was aware of Plaintiff's disability because Plaintiff requested accommodation as a result of his disability.

166) Following Plaintiff's disclosure of his disability, Plaintiff became the target of other School District employees who interfered with Plaintiff's job performance and caused substantial detriment to Plaintiff's employment relationship with Defendant School District.

167) Plaintiff notified Defendant Union of that detrimental treatment and requested Defendant Union advocate on Plaintiff's behalf.

168) Plaintiff reported the effects of the detrimental treatment to Defendant Union, however Defendant Union failed to advocate on Plaintiff's behalf.

169) During the course and scope of Plaintiff's employment with School District, Defendant School District by its agents, servants, supervisors, administrators, human resources and/or employees, acting within the course and scope of their employment, demonstrated a continuous, repetitious, cycle and pattern of harassment, discrimination and retaliation against Plaintiff, which Defendant Union condoned and ratified by taking no action to advocate on behalf of Plaintiff despite the fact that Defendant Union was aware or should have been aware of such misconduct by and through the School District's agents, servants, supervisors, administrators, human resources and/or employees in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12112, et. seq., as amended, and the ADA Amendments Act of 2009 (collectively the "ADAAA") that went into effect on January 1, 2009.

170) The failure of Defendant Union to act on behalf of Plaintiff to prevent and remedy discrimination by Defendant School District and its agents, servants, supervisors, administrators, human resources and/or employees was willful, wanton, malicious, intentional and oppressive.

171) Defendant Union's unlawful employment practices were intentional, and the Union and its employees acted with reckless indifference to Plaintiff's federally protected rights.

172) As a result of Defendant Union's failure to protect and advocate on behalf of Plaintiff, Plaintiff has been injured. Such injuries include, but are not limited to, lost pay, lost benefits, lost promotion opportunities, pecuniary losses, mental anguish, humiliation, injury to reputation, and pain and suffering.

WHEREFORE, Plaintiff requests that this Court award Plaintiff the following relief:

a. Back pay with interest, as appropriate;

b. Front pay as appropriate;

c. Compensatory damages;

d. Punitive damages;

e. Costs, expenses, witness fees and reasonable attorney fees; and

f. Such additional relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED,
TOMMY TRAPPS, Plaintiff


By:   s/Jennifer Zang
        Jennifer Zang

Jennifer Zang, ARDC No. 6322892
Shayla Maatuka, ARDC No. 6283428
Dodd & Maatuka
303 South Mattis Avenue, Suite 201
Champaign, IL  61821
(217) 356-9500
Jen@madelaw.net
Shayla@madelaw.net

STATE OF ILLINOIS                )
                                 ) ss
COUNTY OF PEORIA                 )

## **VERIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned believes the same to be true.



                                    s/Tommy Trapps
                                    TOMMY TRAPPS, Plaintiff

SUBSCRIBED AND SWORN to before
me, a Notary Public, this 23 day of February, 2018.



    s/Stacy McCulley
                Notary Public



OFFICIAL SEAL
Stacy McCulley
Notary Public - State of Illinois
My Commission Expires 6/21/2020