E-FILED
Thursday, 18 October, 2018  10:12:50 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| TOMMY T. TRAPPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   1:18-cv-01085 |
| | ) | |
| PEORIA PUBLIC SCHOOLS, DISTRICT | ) | |
| 150 AND THE SERVICE EMPLOYEES | ) | |
| INTERNATIONAL UNION LOCAL 8 | ) | |
| FIREMAN AND OILERS, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Before the Court is Defendant Service Employees International Union Local 8 Fireman and Oilers' (Union) motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D. 9).[1] The motion has been fully briefed and is ready for disposition. For the reasons stated herein, Defendant Union's motion to dismiss (D. 9) is DENIED IN PART and GRANTED IN PART.

### BACKGROUND

The following relevant facts are taken from the complaint (D. 1), the response to the motion to dismiss (D. 13), and the docket and are presumed true for the purpose of ruling on this motion.

The Plaintiff, Tommy T. Trapps, suffers from anxiety disorder, which has impaired his ability to function both at home and at work. At all relevant times, the

---

[1] Citations to the Docket in this case are abbreviated as "D.__."

Plaintiff was an employee of Defendant Peoria Public Schools, District 150 (School District), and a member of Defendant Union. The Plaintiff instituted this action against the Defendants in February 2018. (D. 1). In August 2018, the Plaintiff and Defendant School District stipulated to the dismissal of all claims against Defendant School District (D. 18), leaving only Count VI, which alleges Defendant Union violated the Americans with Disabilities Act, 42 U.S.C. §§ 12111, *et. seq.* (ADA) (D. 1). Defendant Union now moves to dismiss Count VI pursuant to Rules 12(b)(1) and 12(b)(6). (D. 9)

The Plaintiff was initially hired as a custodian for Defendant School District at its Rolling Meadows facility and under the supervision of head custodian "Jerry." In March 2012, the Plaintiff reported Jerry to the maintenance supervisor for failure to complete his assigned tasks, which left the Plaintiff responsible for the tasks of both he and Jerry. The combination of both Plaintiff's and Jerry's tasks was more than one person could do in a single shift. The Plaintiff therefore requested and was granted reassignment to another facility within Defendant School District. In October 2012, the Plaintiff was promoted and reassigned back to Rolling Meadows, again under the supervision of Jerry. Jerry and his crew continued to neglect their tasks, and the Plaintiff called the maintenance supervisor for direction, again concerned because he and his crew could not complete double the work in a single shift. The Plaintiff was advised that he would not be held responsible for the work of Jerry and his crew.

Immediately following this report, the Plaintiff's coworkers began harassing him daily. The Plaintiff reported the harassment to Defendant School District's

superintendent. Thereafter, the Plaintiff was placed on an unpaid suspension for failing to "adequately or appropriately" perform his job. The Plaintiff returned to work on or about October 25, 2012. He was later promoted to head custodian at Defendant School District's Harrison facility.

On April 3, 2014, the Plaintiff requested leave pursuant to the Family and Medical Leave Act (FMLA) due to severe work-related anxiety. Two weeks later, the Plaintiff received an "Employee Communication Report" alleging several offenses and recommending he be transferred to another facility; the Plaintiff was immediately transferred to Defendant School District's Charter Oaks facility. In May 2014, a coworker filed a complaint alleging the Plaintiff urinated into a floor drain, and the Plaintiff was thereafter placed on administrative leave pending an investigation into the matter. Later that month, the Plaintiff wrote to the superintendent complaining of a hostile work environment.

On June 24, 2014, the Plaintiff, officials of Defendant School District, and officials of Defendant Union held a meeting to discuss the Plaintiff's allegations of a hostile work environment and his April 2014 request for FMLA leave. At the meeting, the Plaintiff stated he did not wish to file a formal complaint against his coworkers because he "was no longer working in the facilities where he had been subjected to the majority of the hostile work environment." On June 30, 2014, the Plaintiff's FMLA leave request was denied due to insufficient documentation.

On September 25, 2015, the Plaintiff requested FMLA leave, again due to work-related anxiety. An employee of Defendant School District requested and received documentation from the Plaintiff's doctor. The request was denied in October

2015. Approximately two weeks later, Plaintiff was issued an "Employee Communication Report" alleging he backed into a garage door.

In November 2015, the Plaintiff requested FMLA leave due to his wife's serious medical condition; Defendant School District never responded to the request. Following a December 2015 inspection of the school buses the Plaintiff was charged with maintaining, the inspector recommended the Plaintiff be terminated. On December 31, 2015, Defendant Union was informed the Plaintiff would be terminated, and the Plaintiff was officially terminated on January 4, 2016. Thereafter, the Plaintiff asked Defendant Union to represent him with respect to his termination, but Defendant Union failed to do so.

## LEGAL STANDARDS

### I. Rule 12(b)(1)

Federal district courts have original subject-matter jurisdiction over all civil actions arising under federal law, *i.e.*, claims that present a federal question. 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This rule ensures the plaintiff is master of the claim. *Id.*

Generally, "a claim 'arises under' the law that creates the cause of action." *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007) (citing *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) (Holmes, J.)). The jurisdictional question presented by Defendant Union's motion to dismiss (D. 9) is

whether the complaint alleges a cause of action under federal law; it is a facial challenge to the Court's subject-matter jurisdiction. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) ("In evaluating a challenge to subject[-]matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised.").

When reviewing a facial challenge to subject-matter jurisdiction, "the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id.*

## II. Rule 12(b)(6)

A complaint must contain a short and plain statement of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief and to notify the defendant of the allegations against him. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). This plausibility standard requires the complaint to demonstrate a right to relief beyond a speculative level. *Twombly*, 550 U.S. at 555–57; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Srvs.*, 496 F.3d 773, 776 (7th Cir. 2007). "[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

At the dismissal stage, the complaint is construed in the light most favorable to the plaintiff and the court accepts all well-pleaded factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). Allegations stated in the form of legal conclusions, however, are not taken as true and are insufficient to survive a motion to dismiss pursuant to

Rule 12(b)(6). *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

## ANALYSIS

I. Section 301 of the Labor-Management Relations Act

At the outset, the Court must address the Plaintiff's discussion of section 301 of the Labor-Management Relations Act (LMRA) in his response (D. 13 at 4-5) and Defendant Union's objection thereto (D. 15 at 2).

A plaintiff is not permitted to raise new claims in his response to a motion to dismiss, though he may present new facts consistent with the allegations contained in the complaint. *Compare Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss[.]"), *with Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) ("[W]e have held that a plaintiff may supplement the complaint with factual narration in an affidavit or brief."); *see also Milazzo v. O'Connell*, 925 F. Supp. 1331, 1340 (N.D. Ill. 1996), *aff'd*, 108 F.3d 129 (7th Cir. 1997) ("These diametrical approaches are difficult to reconcile, but a careful reading indicates that the key distinguishing factor may be whether the plaintiff's response brief alleges new *facts* (which is permissible if they are consistent with the complaint) or whole new *claims* (which may be impermissible)." (emphasis in original)).

In response to both the 12(b)(1) and 12(b)(6) arguments in the motion to dismiss, the Plaintiff argues his claim under the framework of section 301 of the LMRA, 29 U.S.C. § 185(a). (Doc. 13 at 4-5). However, nowhere in the complaint does the Plaintiff allege a cause of action under the LMRA (D. 1), and the Civil Cover Sheet

6

similarly fails to indicate an LMRA claim (D. 1-1). Because the Plaintiff did not raise an LMRA claim in his complaint, he is not permitted to raise it in his response to Defendant Union's motion to dismiss. Consequently, in resolving Defendant Union's motion, the Court will not construe the Plaintiff's claim as an LMRA claim. But, the Court will consider the additional factual allegations in the response that are consistent with the complaint.

II. Rule 12(b)(1)

Plaintiff's complaint clearly and expressly states his claim against Defendant Union arises under the ADA, 42 U.S.C.A. § 12101, *et seq.* (D. 1 at 1, 19-21). The ADA is indisputably federal law, and federal-question jurisdiction exists when the cause of action arises under federal law, *American Well Works Co.*, 241 U.S. at 260. Indeed, the parties agree the Court has jurisdiction over the Plaintiff's ADA claim against Defendant Union. (D. 15 at 3). Nevertheless, Defendant Union urges this Court to find subject-matter jurisdiction lacking.

At the core of Defendant Union's 12(b)(1) argument is the proposition that, though labeled an ADA claim, the Plaintiff's cause of action is actually a claim that Defendant Union breached its duty of fair representation, which Defendant Union contends is a state-law claim over which the Illinois Labor Relations Board has exclusive jurisdiction. (D. 9 at 3). However, Defendant Union's argument ignores the long-standing principle that the Plaintiff is master of his claim. That the Plaintiff's allegations may also form a cause of action cognizable under state law does not necessarily preclude a cause of action under federal law. See *Caterpillar*, 482 U.S. at 392 (noting a plaintiff "may avoid federal jurisdiction by exclusive reliance on state

law," the converse of which is the plaintiff may invoke federal jurisdiction by reliance

on federal law).

That being said, the Court takes note of *Steel Co. v. Citizens for a Better Environment* and its progeny, which are perhaps relevant to Defendant Union's jurisdictional objection. 523 U.S. 83 (1998).

> It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case. . . . [J]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. Rather, the district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy. *Id.* at 89 (internal citations and quotations omitted).

To the extent Defendant Union is arguing the Plaintiff's ADA claim lacks

subject-matter jurisdiction because the factual allegations do not form a meritorious

ADA claim, "[j]urisdiction is not defeated by the possibility that the allegations might

fail to state a cause of action on which a party could actually recover." *Thornton v.

M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015) (citing *Bell v. Hood*, 327 U.S. 678,

682 (1946)). A suit will only "be dismissed for want of jurisdiction where the alleged

claim 'clearly appears to be immaterial and made solely for the purpose of obtaining

jurisdiction or where such a claim is wholly insubstantial and frivolous.' " *Thornton

v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015) (quoting *Steel Co.*, 523 U.S. at

8

89); *see also Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 587 (7th Cir. 2017) ("A claim is insubstantial only if its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." (internal quotations omitted)).

A union member may present a cognizable claim under the ADA against his or her union.[2] *E.g.*, *Eckles v. Consol. Rail Corp.*, 94 F.3d 1041, 1043 (7th Cir. 1996). Accordingly, the Court does not find the Petitioner's claim is so wholly insubstantial to render subject-matter jurisdiction wanting. The Court likewise does not believe the Petitioner included the ADA claim against Defendant Union for the sole purpose of invoking federal jurisdiction, as the claim was one of many in the complaint that presented a federal question. (D. 1) Defendant Union's quarrel with the Plaintiff's claim is better suited to a Rule 12(b)(6) analysis, which will be addressed next.

For these reasons, the Court denies Defendant Union's motion to dismiss on Rule 12(b)(1) grounds.

III. Rule 12(b)(6)

The Plaintiff's claim fails to plausibly demonstrate Defendant Union is liable under the ADA. To summarize, the complaint and response allege (1) the Plaintiff requested FMLA leave on three occasions but his requests were either denied or ignored by Defendant School District; (2) the Plaintiff was harassed by his coworkers; and (3) the Plaintiff asked Defendant Union to negotiate on his behalf with regard to

---

[2] See Ann C. Hodges, *The Americans with Disabilities Act in the Unionized Workplace*, 48 U. Miami L. Rev. 567 (1994) for a discussion on how the ADA is applied in claims by union members against unions.

the harassment and his first FMLA request, and Defendant Union seemingly complied with that request at a meeting on June 24, 2014. The complaint does not clearly indicate whether the Plaintiff's claim is based on Defendant Union's failure to pursue a grievance against Defendant School District for harassment, or otherwise remedy the harassment, or its failure to accommodate the Plaintiff's anxiety disorder. Count VI of the complaint cites both the ADA's general prohibition of discrimination based on disability (42 U.S.C. § 12112(a)) and the requirement to provide a reasonable accommodation (42 U.S.C. § 12112(b)(5)) (D. 1 at 19); presumably, then, Count VI is based on one or both. The Plaintiff's response to Defendant Union's motion to dismiss does not clarify the matter, but instead includes additional factual allegations that he contacted Defendant Union upon being terminated and requested representation, which he did not receive. Regardless of how the complaint is construed, the Plaintiff fails to establish a claim under the ADA against Defendant Union.

Apart from a conclusory allegation that Defendant Union had a duty to advocate on behalf of the Plaintiff with respect to the harassment (D. 1 at 7), the complaint is devoid of any factual allegations, such as terms of the collective bargaining agreement (CBA), supporting that conclusion. To the contrary, a union has no affirmative duty "to investigate and rectify discrimination" by the employer or other employees; indeed, it generally lacks authority to remedy the issue unless the CBA provides otherwise. *E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 660-61 (7th Cir. 2003).[3] Thus, the Plaintiff's ADA claim cannot survive dismissal

---

[3] Though *Pipefitters* is a case interpreting Title VII, interpretation of the ADA often borrows from interpretations of Title VII and the Rehabilitation Act. *E.g.*, Hodges, *The Americans with Disabilities Act in the Unionized Workplace*, *supra*, at 9 n.2.

based on Defendant Union's mere failure to independently investigate or rectify workplace harassment because the Plaintiff has failed to establish Defendant Union had a duty to do so.

To be sure, a union may incur liability under the ADA in its handling of a grievance, as the grievance process is a term and/or privilege of employment. 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment."). However, to the extent the Plaintiff's claim is that Defendant Union failed to pursue a grievance against Defendant School District for the harassment and assuming the CBA established such a procedure, the complaint does not indicate the Plaintiff ever asked to pursue a formal grievance or that he was denied access to the process. Instead, the complaint alleges the Plaintiff asked Defendant Union to advocate for him with respect to the harassment, and the response indicates Defendant Union did so by attending and participating in the meeting on June 24, 2014. (D. 1 at 20; D. 13 at 1-2). At that meeting, the Plaintiff stated he did not wish to file a formal complaint regarding the harassment. (D. 1 at 5). The only logical and reasonable inference to be drawn from these facts is that no formal complaint (or grievance) was pursued by Defendant Union because the Plaintiff stated he did not wish to pursue a formal complaint. There are simply no facts in the Plaintiff's

---

Furthermore, the precise language in *Pipefitters* appears to apply broadly to unlawful discrimination in general as opposed to only discrimination expressly barred by Title VII. *See Pipefitters Ass'n Local Union 597*, 334 F.3d at 661 ("[W]e reject the EEOC's contention that unions have an affirmative duty to prevent racial harassment *or other forms of unlawful discrimination* in the workplace." (emphasis added)). The Court finds *Pipefitters* instructive in this respect.

complaint that allow any inference that Defendant Union failed to pursue a grievance because of the Plaintiff's anxiety disorder. The Plaintiff's ADA claim therefore cannot survive dismissal based on Defendant Union's failure to pursue a grievance for the harassment because the factual allegations clearly indicate the failure to pursue a formal complaint was based on the Plaintiff's expressed wishes as opposed to discriminatory animus.

Similarly, the factual allegations pertaining to the Plaintiff's termination, which are contained in the response as opposed to the complaint, fail to establish— even inferentially—a link between the Plaintiff's anxiety disorder and Defendant Union's failure to represent him. Simply alleging he "believes that the Union's failure to fairly represent him in this matter was . . . based on the Union's knowledge of his disability" is insufficient under *Twombly* and *Iqbal*, which require allegations of fact as opposed to conclusory statements to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555-58). The Plaintiff has therefore failed to plausibly demonstrate Defendant Union violated the ADA's proscription of discrimination on the basis of disability with respect to either workplace harassment or the Plaintiff's termination. *See* 42 U.S.C. § 12112(a).

To the extent the Plaintiff's claim is based on an failure to accommodate his anxiety disorder (42 U.S.C.A. § 12112(b)(5)(A)), the complaint is similarly deficient. From the plain language of the ADA, which does not differentiate between what are colloquially known as employers and unions, it would appear an employee's union has equal responsibility to advocate for a reasonable accommodation to that of the employer's responsibility to provide one. 42 U.S.C.A. § 12111(5) (defining the term

12

"employer," which includes unions). However, the union's responsibility can only extend so far as the duty to negotiate and advocate on behalf of its member because it generally lacks the authority to control the management of the workplace, as recognized in *Pipefitters*; put another way, the union cannot be held liable for the failure to accommodate a disability if the union does, in fact, advocate and/or negotiate for a reasonable accommodation but the employer ultimately fails to provide one. This view is consistent with a prior decision from this District as well as with the National Labor Relations Act, 29 U.S.C.A. § 158(a), which does not require agreement between employee and employer so long as the union fulfills its duty to negotiate. *Ewa*, 2012 WL 984274, at *3 ("[The plaintiff] must allege that the [u]nion took some action to discriminate or retaliate against him in the performance of its agency functions as his union."). Bearing those principles in mind, the Court returns to the Plaintiff's claim.

The complaint states the Plaintiff requested an accommodation for his disability; reading the Plaintiff's complaint and response together, it would appear the Plaintiff is referring to his FMLA leave requests when he states he requested an accommodation. (*See* D. 1 at 4-6, 20; D. 13 at 2). However, the complaint does not indicate the Plaintiff's FMLA leave requests were also presented as requests for reasonable accommodation under the ADA. Certainly, leave can constitute a reasonable accommodation under the ADA in appropriate circumstances. *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017), cert. denied, 138 S. Ct. 1441 (2018). However, the FMLA and the ADA serve different purposes and have different procedures and requirements. *Compare* 29 U.S.C. § 2612(a)(1), *with* 42

13

U.S.C. §§ 12111(8), 12111 (9), 12112(b)(5)(A); *see also Severson*, 872 F.3d at 481 (discussing FMLA leave and leave as a reasonable accommodation under the ADA). Simply requesting FMLA leave without putting the employer—or, here, the union— on notice that the request is likewise a request for a reasonable accommodation cannot automatically transform an FMLA leave request into a request for a reasonable accommodation under the ADA. Here, there is nothing suggesting Defendant Union had any reason to know the Plaintiff's FMLA leave requests were also requests for reasonable accommodation under the ADA. Defendant Union therefore cannot be said to have failed in its duty to negotiate for a reasonable accommodation because it had no reason to know the Plaintiff requested an accommodation.

Moreover, the complaint and response, when read together, indicate Plaintiff requested Defendant Union represent him at the June 24, 2014, meeting during which the Plaintiff's anxiety condition and his first FMLA request were discussed in addition to his allegations of harassment. Defendant Union complied with the Plaintiff's request and attended the meeting on the Plaintiff's behalf, but Defendant School District, the Plaintiff's employer, ultimately denied the request "based on insufficient documentation." (D. 1 at 5). These factual allegations suggest Defendant Union fulfilled its duty under the ADA to negotiate for a reasonable accommodation, even assuming, *arguendo*, Defendant Union's duty to negotiate had been triggered because it knew the FMLA request was a dual request under both the FMLA and the ADA.

Turning to the Plaintiff's September 25, 2015, request for FMLA leave, the complaint is devoid of any suggestion the Plaintiff notified Defendant Union of his request. This leaves a scenario in which Defendant Union knew neither that the request had been made nor that the FMLA request was a dual request under the FMLA and the ADA. Again, Defendant Union cannot be charged with failing to fulfill its duty to negotiate for a reasonable accommodation when Defendant Union had no reason to know the Plaintiff had requested one.

Finally, the Plaintiff's November 18, 2015, request for FMLA leave was based on his wife's medical condition, not his. Again, there is no suggestion Defendant Union was ever aware of this request. But more importantly, the ADA does not require a reasonable accommodation for a family member's medical condition, so any error with respect to that request is not a violation of the ADA.

In summation, the Plaintiff has failed to plead a plausible claim that Defendant Union either (1) discriminated against him on the basis of his anxiety disorder while carrying out its union responsibilities or (2) failed to fulfill its duty to negotiate for a reasonable accommodation. Defendant Union's motion to dismiss pursuant to Rule 12(b)(6) is therefore granted.

Because the deficiencies here are factual and not legal, the Court will allow the Plaintiff an opportunity to replead this claim if he has a good-faith basis for doing so. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").

## CONCLUSION

For the foregoing reasons, Defendant Union's motion to dismiss (D. 9) is DENIED IN PART and GRANTED IN PART.

IT IS HEREBY ORDERED Count VI of the Plaintiff's complaint (D. 1) is DISMISSED without prejudice. The Plaintiff is granted twenty-one (21) days from the entry of this Order to submit an amended complaint repleading his ADA claim against Defendant Union.

*It is so ordered.*

Entered this 18th day of October, 2018.


                                                    s/ James E. Shadid
                                                   JAMES E. SHADID
                                          Chief United States District Judge

16